7976

FLAGLER v. ATLANTIC COAST LUMBER CORPORATION.

1. REAL PROPERTY—TIMBER.—The cases of *Hydrick* v. *Knotts,* 12 Rich., 314, and *Wilson Lumber Co.* v. *Alderman & Sons,* 80 S. C., 106, do not control this case, for in the contract here there is an attempt to limit the time of removal of the timber which does not appear in those cases.

2. IBID.—IBID.—In the contract here for the sale and removal of timber, signed by both parties, it is evident the parties had in mind a time limit of some kind when the cutting should commence, but no time having been expressed, the Court will assume that a reasonable time was intended.

*Crawford* v. *Atlantic Coast Lumber Corporation,* 79 S. C., 166, *distinguished from this.*

3. IBID.—IBID.—TAXES.—This contract held not to be rendered void by the provision that the grantor should pay the taxes, while the title to the timber is transferred to the grantee.

Before PRINCE, J., Williamsburg, December, 1910. Reversed.

Action by A. W. Flagler against Atlantic Coast Lumber Corporation.   Plaintiff appeals.

*Messrs. W. F. Clayton* and *Henry Buck,* for appellant.

*Mr. Clayton* cites: *Contract is too uncertain to enforce:* 38 S. E. 26.   *Perpetuities:* 22 Ency. 702-737.

*Mr. Buck* cites: *When a contract provides that timber is to be removed in a specified time all timber not so. removed reverts to grantor:* 25 Cyc. 155-2; 13 Me. 122; 96 Mich. 83; 62 Am. St. R. 661; 46 S. E. 24; 51 S. E. 852; 35 L. R. A. 513; 94 Ga. 353; 22 Wis. 544; 54 Ohio 298; 67 Me. 84; 37 Wis. 360; 119 Am. St. R. 709; 55 L. R. A. 513; 128 Am. St. R. 868.

*Messrs. Willcox & Willcox* and *Henry E. Davis,* contra, cite: *Is deed void for uncertainty:* 38 S. E. 26; 12 Rich. 314; 77 S. C. 255; 80 S. C. 106; 79 S. C. 166.   *The deed conveys the timber in fee simple:* 80 S. C. 106.   *And grantee may remove at any time:* 77 S. C. 255; 12 Rich. 314; 11 Coke 46; 3 Am. Dec. 215; 13 Me. 122; 10 Gray 48; 47 Me. 595; 1 Am. St. R. 551; 53 Am. St. R. 73; 37 S. W. 260; 70 S. W. 290; 123 Am. St. R. 58; 98 S. W. 238; 99 S. W. 736; 57 S. E. 873.   *Provision as to removal is a covenant:* 123 Am. St. R. 58; 12 Rich. 314; 109 Am. St. R. 107; 20 Am. R. 119; 76 At. 194; 32 Am. R. 193; 49 N. E. 821. *Covenant cannot control the grant:* 79 S. C. 166; Harp. 492; 4 McC. 198; 76 S. C. 297; 13 Cyc. 619; 71 S. C. 64; 36 S. C. 295; 48 S. C. 431; 77 S. C. 171.   *Should grantee begin to cut within a reasonable time:* 79 S. C. 170; 80 S. C. 110; 12 Rich. 314; 80 S. C. 106; 53 Am. St. R. 73.   *Removal in a reasonable time, the contract making no provision as to*

*time:* 55 L. R. A. 531; 22 Am. Dec. 410; 1 Sandf. Ch. 52;
2 Barb. 613; 15 Pa. St. R. 571; 10 Gray 48; 47 Me. 595;
16 Ky., L. R. 55; 49 N. H. 204; 18 Am. R. 455; 113 Mass.
107; 20 Am. R. 119; 28 Id. 776; 6 At. 48; 27 L. R. A. 434;
47 Id. 226; 30 At. 247; 37 S. W. 260; 43 S. W. 732; 36
S. E. 758; 83 Am. St. R. 661; 85 Id. 404; 49 S. E. 436; 91
S. W. 53; 46 S. E. 24; 61 At. 675; 97 S. W. 354; 49 S. E.
831; 50 S. E. 369; 91 S. W. 27.   *Notice necessary to make
time begin to run:* 12 Rich. 314; 1 Am. St. R. 551; 30 At.
247; 2 Barb. 613; 15 Pa. St. R. 571; 53 Barb. 403; 35 Am.
R. 683; 16 N. W. 666; 47 L. R. A. 226; 37 S. W. 260.
*Deed is not void as against public policy:* 131 Am. St. R.
540; 77 S. C. 467; 85 S. C. 405; 79 S. C. 466; 80 S. C.
106, 185.


July 18, 1911.   The opinion of the Court was delivered by

HON. E. MARION RUCKER, *Acting Associate Justice in
place of* MR. JUSTICE WOODS *disqualified.*   On the 10th day
of June, 1899, the plaintiff-appellant entered into an agree-
ment with one R. L. Montague by the terms of which he, for
a valuable consideration, conveyed to the said R. L. Mon-
tague the timber then growing upon two tracts of land,
amounting to two hundred and thirty (230) acres, the exact
language as to the timber being "all the timber of every kind
and description of twelve (12) inches stump diameter and
upwards, twelve inches from the ground at the time of the
cutting, now standing and being" upon the land then more
accurately described.   Subsequently to the execution of this
instrument, but prior to the commencement of this action,
the grantee conveyed his interest to the Atlantic Coast Lum-
ber Corporation, the defendant herein.

September 22, 1910, the plaintiff-appellant served his com-
plaint herein, and motions to strike out certain portions
thereof were made, as well as like motions to strike out cer-
tain paragraphs of the answer, and thereupon such orders

were taken, unnecessary to set out here, as resulted in the following amended complaint:

"The plaintiff complaining of the defendant alleges:

1st. "That defendant is a corporation chartered under the laws of the State of South Carolina.

2d. "That the plaintiff was, at the times hereinafter mentioned, and is now the owner in fee of that certain plantation in Williamsburg county, State of South Carolina, containing two hundred and thirty acres, more or less, and bounded as follows, on the north by lands of the estate of James Coker, on the east by lands of Louis Yarborough, on the south by lands of Louis Yarborough and J. F. Brockington, and on the west by the Northeastern Railroad and lands conveyed by R. T. Flagler.

3d. "That, on June 10, 1899, the plaintiff entered into a contract with one R. L. Montague, whereby plaintiff conveyed to R. L. Montague all of the timber, excepting oak and hickory, then standing on the above described tract of twelve inches and above in diameter twelve inches from the ground, and that said contract was assigned by R. L. Montague to the defendant herein, which is the present owner thereof.

4th. "That *inter alia,* the said contract reads as follows: 'It is agreed that the time limit of this conveyance, as above set forth shall be ten years from the time the second party begins cutting and removing the said timber from the lands above described; but the first party agrees that the said time limit may be extended from year to year thereafter, upon payment by the said second party, his heirs, executors, administrators or assigns to the party, his heirs, executors, administrators or assigns, of interest on the original purchase price above mentioned, at the rate of six per cent. per annum.'

5th. "That more than eleven years have elapsed, and the defendant has made no action or effort to cut and remove the timber, nor is there any prospect that defendant will in

the near future, or at any time, cut and remove said timber; and, by reason of defendant's long delay, plaintiff alleges that said contract cannot be equitably enforced as between plaintiff and defendant, as many trees not twelve inches in diameter from the ground at date of this contract in the long lapse of time from June 10, 1899, have by reason of eleven years' growth become twelve inches and more in diameter, and it will be impossible to separate them in cutting said timber.

6th. "That plaintiff, after waiting more than ten years, is informed and believes that said plaintiff has in good faith tendered the defendant the money paid by Montague to plaintiff and demanded that his deed be cancelled and delivered to him and defendant has declined to do so.

"Wherefore, plaintiff demands judgment against the defendant, that defendant be required to deliver to the clerk of this Court the contract or deed aforementioned, and that said clerk cancel the same of record, and for such further relief as to the Court may seem just, and for the cost of this action."

Answer to amended complaint:

"The defendant, by way of answer to the amended complaint served under the order of the Court striking out certain matter from the original complaint, alleges:

1. "That it admits the allegations of the first, second and fourth paragraphs of said complaint.

2. "That it admits that plaintiff, on June 10, 1899, executed to R. L. Montague a deed and contract conveying to him certain timber, and that defendant has succeeded to the rights of said Montague under said deed and contract as alleged in the third paragraph of said complaint, but it denies that said deed and contract conveyed only the timber then standing on the land twelve inches and above in diameter twelve inches from the ground, and on the contrary, alleges that it conveyed the timber then standing that should be

twelve inches in diameter twelve inches from the ground at the time of cutting.

3. "That it admits that as alleged in the 5th paragraph of said complaint, more than eleven years have elapsed and it has not attempted to cut and remove said timber, but it denies each and every other allegation in said complant contained."

The contract was as follows:

"State of South Carolina, County of Williamsburg.

"A. W. Flagler to R. L. Montague.

"This deed and contract made the 10th day of June, in the year of our Lord eighteen hundred and ninety-nine (1899), by and between A. W. Flagler, of the county of Williamsburg, and State of South Carolina, of the first part, herein called the first party, and R. L. Montague, of the city of Norfolk, of Norfolk county and State of Virginia, of the second part, herein called the second party.

"Witnesseth, That the first party for and in consideration of the premises and the sum of seventy-five dollars cash in hand paid by the second party at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, released and delivered unto the said second party, his heirs, executors, administrators and assigns, all the timber of every kind and description of twelve (12) inches stump diameter and upwards, twelve inches from the ground at the time of cutting, now standing and being upon that certain tract, piece or parcel of land, known as the Home Tract lands and upon which A. W. Flagler now lives, exception being made to the following described timber which is not conveyed under this contract, all the oak and hickory timber, the said lands are bounded and described as follows, to wit: * * * situate in the township of Ridge, county of Williamsburg, and State of South Carolina. To have and to hold the said timber on the land described above unto the said second party, his heirs, executors, administrators and assigns, together with the

exclusive right and privilege to the second party, his heirs, executors, administrators and assigns, to enter freely upon the said described land, to cut roads through the same or other contiguous land of the said first party, to lay out, make and construct all necessary or convenient railroads, tramways, cartways, stables and other fixtures upon the said land and contiguous lands of the said first party, and to have and enjoy all such right of way upon and over the same and to do and perform all such work as may, in the opinion and discretion of the said second party, his heirs, executors, administrators and assigns, be necessary for the cutting, handling, hauling and removing of the said timber, and to have and use a permanent right of way eighty (80) feet wide upon and across the land above described, to be selected and located by the said second party, his heirs, executors, administrators and assigns, for a permanent railroad or tramway or for any permanent branch railroad or tramway.

"It is further agreed that the said second party shall have the privilege and be entitled to use, free of charge, such small timber as may in the judgment of the said second party, his heirs, executors, administrators or assigns, be required to build, construct and maintain railroads, cartways, roadways and other fixtures during the continuance of this contract for the removal of the timber herein conveyed. And the said first party agrees to pay all further taxes on the said land and timber. The first party reserves the right to use any timber for ordinary plantation purposes on said land. The first party hereby agrees to warrant and forever defend the title of the said timber unto the said second party, his heirs, executors, administrators and assigns, against all others lawfully or otherwise claiming or to claim the same or any part thereof. It is agreed that the time limit of this conveyance as above set forth shall be ten (10) years from the time the second party begins cutting and removing the said timber from the lands above described; but the first party agrees that the said time limit may be extended from year to year there-

after upon the payment by the said second party, his heirs, executors, administrators and assigns, to the first party, his heirs, executors, administrators or assigns, of interest on the original purchase price above mentioned at the rate of six per cent. per annum. The second party, his heirs, executors, administrators and assigns, shall pay any damage that may accrue to the first party, his heirs, executors, administrators or assigns, by reason of any negligence on the part of the agents or employees of the second party, his heirs, executors, administrators and assigns, and for damage done to growing crops, by virtue of right of way hereinbefore provided for, said damage shall be ascertained and assessed by two disinterested persons, one to be chosen by each of the parties to this contract, and in case they disagree the two so chosen to select a third, and the report of said appraisers made in writing shall be final and binding. All the covenants, stipulations and agreements herein assumed or undertaken shall be binding upon their heirs, executors, administrators and assigns.

"Witness our hands and seals, this 10th day of June, in the year of our Lord eighteen hundred and ninety-nine, and in the one hundred and twenty-third year of the sovereignty and independence of the United States of America. A. W. Flagler, (L. S.)   R. L. Montague, (L. S.)   Signed, sealed and delivered in the presence of S. McB. Scott, H. C. Askins, as to A. W. Flagler; L. M. Overton, H. K. Weaver, as to R. L. Montague. (Int. Rev. Stamp Can $1)." To which there was attached in usual form the renunciation of dower of Mrs. Ella S. Flagler.

Upon the issues thus joined Judge Prince, before whom the case was finally heard, dismissed the complaint in the following decree:

"This suit was brought for the purpose of having the Court decree a certain conveyance of timber to be void. The conveyance was executed by the defendant to one R. L. Montague, and bore date June 10, 1899. Defendant is at

present entitled to the property and rights acquired by Montague from plaintiff.

"The conveyance above mentioned contained the following covenant or agreement, which appears below the granting *habendum* and warranty clauses of said conveyance, to wit: 'It is agreed that the time limit of this conveyance, as above set forth, shall be ten years from the time the second party begins cutting and removing the said timber from the lands above described; but the first party agrees that the said time limit may be extended from year to year, thereafter, upon the payment of the said second party, his heirs, executors, administrators and assigns, to the first party, his heirs, executors, administrators or assigns, of interest on the original purchase price above mentioned, at the rate of six per cent. per annum.'

"By the terms of this conveyance, plaintiff 'granted, bargained, sold, released and delivered' to Montague, 'his heirs, executors, administrators and assigns,' all the timber therein described "To have and to hold all and singular the said timber unto the said' R. L. Montague, 'his heirs, executors, administrators and assigns.'

"This conveyance contains the following covenant of warranty, to wit: 'The said first party (A. W. Flagler) hereby agrees to warrant and forever defend the title to the said timber unto the second party (R. L. Montague), his heirs, executors, administrators and assigns, against himself and all others lawfully or otherwise claiming or to claim the same or any part thereof.'

"Immediately after the covenant of warranty appears the agreement by reason of which, it is charged by plaintiff that this conveyance should be declared void.

"The plaintiff takes the further position in his complaint, that more than eleven years has elapsed since the date of said conveyance, and that no motion has been made by plaintiff to cut the timber. By reason of this alleged long delay, he

contends that the contract cannot be equitably enforced because of the fact that on account of eleven years' growth a large number of trees have reached the contract size since the date of the contract. At the trial, this last position was abandoned, plaintiff's counsel stating that this charge was made on account of a mistake in his reading of the conveyance.

"The case really turns upon the construction of the conveyance in question.

"My construction of this paper is that it conveys to R. L. Montague the timber therein described in fee simple, and that by this conveyance he became entitled to the timber in fee simple together with a sufficient interest in the soil to sustain the trees. Montague had the right to enter at any time upon the land and cut the timber. This being true, a subsequent covenant or agreement tending to limit the time Montague should have for cutting and removing the timber after he should once commence such cutting and removal, could not have the effect of defeating or limiting the purchaser's title to the timber in question, or to the interest in the soil necessary to support same.

"My conclusion to the effect that the deed in question conveys the timber to the grantee named therein in fee simple with a sufficient interest in the soil to sustain the trees is based on the cases of *Knotts* v. *Hydrick,* 12 Rich. 314, and the *Wilson Lumber Company* v. *D. W. Alderman & Sons Company,* 80 South Carolina 106.

"My conclusion to the effect that the estate created by the granting clauses of the deed is not affected by the covenant as to removal, is based on the case of *Crawford* v. *Atlantic Coast Lumber Corporation,* 79 South Carolina 166, and authorities therein cited.

"It is therefore ordered, adjudged and decreed that the relief prayed for be refused and the complaint be dismissed, with costs. Geo. Prince, Presiding Judge."

From which action the plaintiff duly served notice of intention to appeal, and now comes to this Court with the following exceptions:

"Plaintiff excepts to the rulings of the presiding Judge and to the construction placed on the conveyance herein, on the following grounds:

First. "Because his Honor erred, it is respectfully submitted, in holding that under the terms of the conveyance herein R. L. Montague was granted all of the timber therein described in fee simple, and by this conveyance he became entitled to the timber in fee simple, together with sufficient interest in the soil to sustain the trees. And that the said Montague and respondent, his grantee, have the right at any time to enter upon the land and cut the timber; whereas, it is respectfully submitted, that in construing this deed, effect should be given to each clause therein, and by the proper construction, the said R. L. Montague was conveyed only so much timber as was removed within the time limit.

Second. "Because his Honor erred, it is respectfully submitted, in holding that the clause limiting the time in which the timber was to be removed is a subsequent covenant or agreement and should not have the effect of defeating or limiting Montague's title to the timber in question, or the interest in the soil necessary to support same, it being respectfully submitted that under the terms of this conveyance the said Montague took a determinable fee, and to him was conveyed only so much timber in fee as was removed within the time specified. That the time limit was not a covenant or agreement, but was in the nature of a condition and should be given effect as such. That such construction should be given to the deed as will give effect to each clause, and, by proper construction of the deed, only such timber as was removed, within the time specified, was conveyed to the said Montague in fee simple, and that the said Montague, under the terms of the conveyance, was bound to commence to cut the timber within a reasonable time, that more than

eleven years having elapsed and the said Montague and the respondent herein, his grantee, not having commenced to cut and remove said timber, all their rights thereunder are lost. That such construction is necessary, in order to give effect to the intention of the parties, as legally expressed.

Third. "Because his Honor erred, it is respectfully submitted, in holding that under the terms of the said conveyance, the said Montague was conveyed the timber therein described in fee simple, with the right to enter upon the said land and cut and remove the timber at any time, in that such construction is against public policy, in that the plaintiff herein is permanently deprived of the right to the use of the soil and its cultivation, which could not have been the intention of parties taken from the whole instrument, and which would prevent the development and improvement of the natural resources of the commonwealth.

Fourth. "Because his Honor erred, it is respectfully submitted, in not holding that the conveyance was void by reason of the provision therein that plaintiff should pay the taxes on the timber, when the laws of the State places that burden upon the owner thereof, and such provision is contrary to law and void as against public policy.

Fifth. "Because his Honor erred, it is respectfully submitted, in not holding that the conveyance herein is void for uncertainty."

The questions then presented to this Court, as raised by the appellant, for consideration are:

First. That the grant to the defendant-respondent was for a limited time only, and that the Court in construing the contract should determine that this time was a reasonable time from the making of the contract.

Second. That as eleven years have elapsed since the making of the contract, that more than a reasonable time has expired and that the rights of the defendant-respondent have terminated.

Third. That the agreement in the contract that the plaintiff should pay the taxes on the timber during the continuance of the contract is in violation of the law, and that the contract is, therefore, void.

In behalf of the defendant-respondent it is claimed:

First. That under the language of the contract the defendant took a fee simple title to the timber and such interest in the land as was necessary to support the timber and that this question is *stare decisis* in this State, and for this position relied upon the authority of *Knotts* v. *Hydrick,* 12 Rich. 314, and *Wilson Lumber Company* v. *Alderman & Sons Company,* 80 S. C. 106, 61 S. E. 217.

And, under the case of *Crawford* v. *Atlantic Coast Lumber Company,* that the limitations, if any, of this contract could not affect the fee simple character of the grant.

In the discussion of the case before the Court, the question that certain phases of the contract were presented to this Court on appeal when not directly raised by the pleadings, was waived by counsel for the respondent, and they joined in the request that the contract in question be fully construed by this Court. For the purpose of convenience we will first consider the question of the correctness of the position taken by respondent's counsel, that the main question at issue is already settled in this State under the authority of *Knotts* v. *Hydrick,* 12 Rich. 314, and the *Wilson Lumber Company* v. *Alderman & Sons Company,* 80 S. C. 106, 61 S. E. 217. If this be true, it follows that all of the questions raised by the appellant must be decided adverse to him without further reason, except the question raised by the fourth exception.

It is therefore necessary to examine the cases cited, to see if they do establish that which is claimed for them by the defendant and fix its claim to the timber under the terms of the present contract.

The case of *Knotts* v. *Hydrick, supra,* was decided on the following facts: there the grant was not of timber but of

land with an express reservation to the grantor of "all timber growing on said land suitable to be sawed into lumber." The grantee gave notice to the grantor of the deed to remove the timber, which the grantor did not do, and the grantee then girdled the trees, and the action arose by reason of the grantor suing the grantee for the value of the trees rendered unfit for lumber. Under these circumstances, this Court held that the grantor had not only an estate in the trees but also such an interest in the soil as was necessary to sustain them, and further that such an estate cannot be terminated by the grantee by giving the grantor notice and a reasonable time to remove the timber.

It is well to be observed that in this case there were no words used in the contract or deed which undertook to limit the time within which the timber was to be removed.

In *Wilson Lumber Company* v. *Alderman & Sons Company*, one McElveen conveyed to Wilson all the timber upon a certain tract, with *habendum* to Thomas Wilson and his heirs and assigns forever with the usual general warranty. Within a year Wilson built a tramway to the land, cut and sawed some of the timber, and then removed the tramway and milling machinery. Subsequently he conveyed his interest to Wilson Lumber Company, and the heirs of McElveen, the grantor of Wilson, conveyed the timber to Alderman & Sons Company for a term of years, and sometime thereafterwards the latter company went upon the lands and cut some of the timber, and the action was commenced by the Wilson Lumber Company for an injunction to restrain the defendant from cutting the timber; at the trial it was agreed after the construction placed by the presiding Judge (Judge Prince) upon the deed from McElveen to Wilson, that there was nothing for the jury to pass upon, he holding that the deed being in form a fee simple deed without conditions or limitations, it conveyed the timber with such interest in the land as was necessary to sustain the trees. And upon appeal his

construction of the deed was sustained by this Court in an opinion rendered by Chief Justice Jones.

Under these cases then, and our attention has been invited to no others, is the main question presented by the appeal in the present case decided adversely to the appellant's position? It will be noted that neither in the case of *Knotts* v. *Hydrick* nor in *Wilson Lumber Company* v. *Alderman & Sons Company* was there an attempt made in the deeds to limit the right of the owner of the timber to any given period of removal. In the first case there was simply a retention of title to the timber in the deed by the grantor, and in the latter case a grant thereof without limitations or conditions, and all this Court held was that in the absence of such limitations upon the right of removal that such right of removal continued to exist in the owner of the timber. In other words, the deeds under construction failed to show by anything on their face any intention on the part of the parties thereto of limiting the right to remove.

In the case now presented, an attempt has been made to limit the time in which removal can be had: "It is agreed that the time limit of this conveyance as above set forth shall be ten (10) years from the time the second party begins cutting and removing the said timber from the land above described; * * *" And in reference to the right of the grantee to build and maintain tramways, roadways, etc., "during the continuance of this contract for the removal of the timber herein conveyed" there is evidently an attempt to limit the time of removal by the grantee of the timber. And without at this time passing upon the question of the sufficiency of such an attempt to carry out the intent; it is enough to say that the words used in the contract were absent in *Knotts* v. *Hydrick* and *Wilson Lumber Company* v. *Alderman & Sons Company;* nor were any provisions of similar import found in either of these cases, we are, therefore, of opinion that they do not control the case now under consideration.

Rep.]                    April Term, 1911.

The question presented then by this case not having heretofore been passed upon by this Court it becomes necessary to examine the authorities to ascertain what the law is.

Before doing so, though, let us first turn to the contract itself, and see what light it gives as to the intention of the parties, for in the last analysis their intent is the controlling factor in the construction of the deed, provided the instrument furnishes the evidence of the intent, and here it is to be borne in mind that whilst the deed in the words used is at first such words as ordinarily convey a fee simple title that the deed is signed by both the grantor and grantee and the reason for this lies in the fact that the parties intended to bind each other to certain obligations; upon the grantor, the passing of the title to the grantee, and upon the grantee, not only the right to remove, but, in a qualified sense, the duty also of so doing. A time limit of some kind was evidently in contemplation, the exact wording of it is, "It is agreed that the time limit of this conveyance as above set forth shall be ten (10) years from the time the second party begins cutting and removing the said timber from the lands above described * * *." It is contended by the respondent that this language is plain, simple and unambiguous, that it simply means that when the owner of the timber commenced cutting he must finish within ten years. But the obstacle in the way of the adoption of this view is that it presupposes that the grant was for practically an indefinite period, as there is nothing within the grant which shows when the cutting and removing of the timber is to begin. The grant in terms was "all the timber of every kind and description of twelve (12) inches stump diameter and upwards, twelve inches from the ground at the time of cutting, now standing and being upon that certain tract of land." So it would follow that there would be nothing to prevent the grantee from indefinitely holding the land in its original condition; for whilst it is admitted that the work of cutting and removing must be done within the period of

ten years from the date of the commencing, it is maintained that it lies solely within the discretion of the grantee to determine when he will commence, limited only by the provision in the agreement that the timber sold must have been in existence upon the tract at the time when the contract was made. As long as such a tree existed the right to commence cutting would remain with the grantee. How long do trees live? Certainly it is not unreasonable to suppose that many of them live for a hundred or more years, and if the respondent is right then on June 9, 1999, the respondent or its assigns could commence to cut this timber, and in the meantime the land would remain encumbered and unfit for cultivation. And during this long period the grantee was to pay taxes, not only on the land, but on the timber as well. Was this contemplated by the parties? We think not. Some lesser period of time must have been in the minds of the grantor and grantee. What this lessor period was the agreement fails to show. What rule does the law supply in such a case? In the case of *Hall* v. *Eastmen,* 89 Miss. 588, the time limit was as follows: "This deed is to continue and remain in force until the said Eastman, Gardiner & Company, their successors and assigns, commence to cut and lumber the same and for one year thereafter, and then to become void and of no effect." In construing this clause for all essential purposes the same as that under consideration, the Court held that the grantee must commence the work within a reasonable time.

*McRae* v. *Stillwell, Millen & Company,* 111 Georgia, page 65, is also directly in point. There the grant was to "all the pine timber suitable for sawmill purposes" on eleven described lots of land, each containing two hundred and two and a half (202½) acres. The paper also contained the following clause: "I acknowledge the receipt of the sum of $550 in cash, and note this day paid me by party of second part; and do agree that amounts left unpaid this day shall be paid as follows: When each lot is entered to cut said tim-

ber, the balance due on each lot is $100, which will be due as
above stated; and I also for the above stated consideration,
give, bargain, sell, alien, and convey to said party of second
part, their heirs and assigns, the full right of way to rail-
roads, tramroads, and wagon roads, in and through this said
land for the purposes above stated, said right of way to con-
tinue as long as said mill operation may require." In con-
struing this contract, the Court, speaking through Mr. Jus-
tice Cobb, with reference to the last portion of the above
quotation, held that the use of this language indicated an
intention upon the part of the party to limit the time of the
building of such railroads, tramroads, etc., and therefore of
the right to cut and remove the timber, the Court saying
"that it was the intention of the parties to this instrument
that the grantee should become the owners of the timber
suitable for sawmill purposes growing on the land at the
date of the execution of the deed, and that such timber was
to be removed from the premises at a reasonable time after
execution of the conveyance." And the Court further ani-
madverted to our case of *Knotts* v. *Hydrick,* and in effect
drew the same distinction from it that we have hereinbefore
set out. In this connection it is well to note that in the case of
*Hall* v. *Eastmen, supra,* which was the first case of this kind
arising in the State of Mississippi, and in which the doctrine
that where no time was fixed for the commencement of the
removal of the timber, but some time was evidently in the
contemplation of the parties, that the Courts would imply a
reasonable time. That thereafterwards, the question was
presented to that Court, similar to the facts of *Knotts* v.
*Hydrick,* and *Wilson Lumber Company* v. *Alderman & Sons
Company,* that is to say, a case in which from the contract
no time limit was fixed directly, nor by implication, that the
Court came to the same conclusion that this Court did in
those cases. This was the result in the case of *Butterfield
Lumber Company* v. *Guy* (131 American States Reports,
540). In the State of North Carolina, while we are not

346 FLAGLER *v.* LUMBER CORPORATION.

prepared at this time to adopt the entire reasoning of the Courts, it is sufficient to say that the doctrine of a reasonable time to commence under a contract, such as that in this case, has been adopted. (*Bunch* v. *Elizabeth City Lumber Company*, 46 S. E. R. 24). .

It is not necessary to discuss the large number of citations of counsel in their arguments. Suffice it to say, that we are of opinion that, both by the inherent reason of the thing, as well as by authority, that the true rule is, that wherever it is apparent in a contract that the parties had in view some time for the commencement of the removal of the timber, which intent was not embodied in the terms of the contract, that the law will presume, and will enforce that such commencement of the removal of the timber shall be within a reasonable time from the date of the contract. As to what constitutes a reasonable time, we will not undertake to decide as that matter has not been considered by the trial Court.

Upon the doctrine laid down in *Crawford* v. *Atlantic Coast Lumber Company*, 79 S. C. 166, 60 S. E. 445, suffice it to say that under the construction we have given this deed, that case is not applicable because it is conceded by all the authorities that if the intent of the parties can be gathered from the instrument, that such intent must be given effect, and in this case we have found from the contract what that intent was, and in addition to this it may be stated that there was prior to the warranty clause in this case a distinct reference to such limitation of time to the apparently otherwise fee simple grant made, for the contract in speaking of the granting of rights for railroads and cart roads, etc., says, "during the continuance of this contract for the removal of the timber herein conveyed."

The fourth exception, that the conveyance was void because it provided that the plaintiff should pay the taxes on this timber when the law required this burden to be borne by the defendant, we cannot sustain, because we can see no reason why the violation of the law

should carry with it any other penalty than that affixed by the law, and this exception is therefore overruled. This dis-. poses of all the questions raised by the appeal.

It follows from what has herein been set out that the presiding Judge was in error in dismissing the complaint; and the case is remanded for the purpose of taking testimony and determining as to what would be a reasonable time within which to commence removing the timber from the land in dispute, under all the facts and circumstances surrounding the parties at the time of the making of the contract; and it is so ordered.