8052

McCLARY v. ATLANTIC COAST LUMBER CORPORATION.

1. REAL PROPERTY—TIMBER.—THE CONTRACT in question is construed to mean that the parties had in mind some definite time when the grantee should begin to cut the timber, but there being no time expressed in the contract, the Court holds that the cutting should commence in a reasonable time. What is a reasonable time must be determined on the merits of each case and rests on the situation of the parties at the time of making the contract.

2. APPEAL—INJUNCTION.—Whether the point that a temporary injunction was necessary for the protection of the rights of plaintiff, was made on Circuit, cannot be determined from the record, but the issue of injunction having been before the Court below the question is treated as if made there.

3. INJUNCTION.—Where a temporary injunction restraining defendant from cutting timber is dissolved below on an erroneous construction of the contract, the injunction should be restored as falling in the class of irreparable injuries.

4. REHEARING *refused.*

Before. DeVORE, J., Williamsburg, February, 1911. Reversed.

Action by Samuel M. McClary against Atlantic Coast Lumber Corporation and Industrial Trust Company. Plaintiff appeals.

*Messrs. Walter Hazard* and *Lee & Fishburne,* for appellant. *Mr. Hazard* cites: *This action is essentially for injunction:* 84 S. C. 51; 75 S. C. 220; 27 W. Va. 510; 54 S. C. 457; 51 S. C. 433; 62 S. C. 196; 60 S. C. 559; 69 S. C. 52. *Temporary injunction should not have been dissolved:* 2 Spelling, secs. 1057, 1067, 1019; 30 N. J. Eq. 579; 76 N. C. 407; 77 S. C. 81; 54 S. C. 435; 60 S. C. 559. *Construction of the deed:* 13 Cyc. 618, 619, 621; 2 Ency. 139; 2 Black Com. 381, note 15; 23 S. C. 232; 57 S. C. 173. *Doctrine of reasonable time:* 55 L. R. A. 513; 36 S. E. 758; 15 Pa. 364; 164 Pa. 234; 28 Am. R. 776;

Cases cited in note to 55 L. R. A.; *McRae* v. *Silwell,* 38
S. E. 26; 51 S. E. 852; 46 S. E. 24; 32 S. E. 94; 57 S. E.
873; 45 So. 492; 119 Am. St. R. 709; 74 Miss. 877; 131
Am. St. R. 540; 45 So. 492; 96 Pac. 420; 64 S. E. 200.
*Deed is void because it requires grantee to pay taxes indefi-
nitely on land and timber:* Code 1902, secs. 261, 269, 263;
64 S. C. 24.

*Messrs. Willcox & Willcox* and *Henry E. Davis* and
*Kelly & Hinds,* contra.    *Messrs. Willcox & Willcox*
and *Henry E. Davis* cite: *Question not made below, not
considered here:* 76 S. C. 504; 78 S. C. 551.    *Under
construction of deed by Court below injunction not
entitled to stand:* 58 S. C. 491; 75 S. C. 221; 84 S.
C. 53; 86 S. C. 160; 77 S. C. 81; 64 S. C. 405; 27
S. C. 415; 80 S. C. 106.    *Deed conveys the timber in fee
simple:* 80 S. C. 106; 77 S. C. 255; 12 Rich. 314; 11 Coke
46; 3 Am. Dec. 215; 13 Me. 122; 10 Gray 48; 47 Me. 595;
1 Am. St. R. 551; 53 Am. St. R. 73; 37 S. W. 260; 70
S. W. 290; 123 Am. St. R. 58; 98 S. W. 238; 99 S. W.
736; 57 S. E. 873; 19 S. C. 9; 131 Am. St. R. 540; 12 S. C.
62.    *The provision as to removal is a covenant:* 123 Am.
St. R. 58; 109 Am. St. R. 107; 20 Am. R. 119; 32 Am. R.
193; 49 N. E. 821; 15 S. C. 440.    *Covenant cannot con-
trol the grant:* 79 S. C. 166; Harp. 492; 4 McC. 198; 48
S. C. 282; 76 S. C. 297; 1 Dev. on Deeds, sec. 214; 13 Cyc.
619; 71 S. C. 64; 36 S. C. 295; 48 S. C. 431; 77 S. C. 171;
83 S. C. 265; 79 S. C. 166.    *Must grantee begin to cut
within a reasonable time?* 79 S. C. 170; 80 S. C. 110; 12
Rich. 314; 80 S. C. 106; 53 Am. St. R. 73.    *Cases hold-
ing that where deed expresses no time, only a reasonable
time will be allowed:* 55 L. R. A. 531; 22 Am. Dec. 410;
1 Sandf. Ch. 52; 2 Barb. 613; 15 Pa. St. R. 571; 10 Gray.
48; 47 Me. 595; 16 Ky. L. R. 55; 49 N. H. 204; 18 Am.
R. 455; 113 Mass. 107; 20 Am. R. 119; 28 Am. R. 776;
45 Am. R. 19; 6 At. 48; 38 N. W. 794; 27 L. R. A. 434;

47 L. R. A. 226; 30 At. 247; 37 S. W. 260; 43 S. W. 732; 36 S. E. 758; 83 Am. 661; 85 Am. St. R. ·404; 39 S. E. 436; 91 S. W. 53; 46 S. E. 24; 61 At. 675; 97 S. W. 354; 49 S. E. 831; 50 S. E. 369; 91 S. W. 27. *Necessity of notice to begin time to run:* 12 Rich. 314; 1 Am. St. R. 551; 30 At. 247; 2 Barb. 613; 15 Pa. St. R. 571; 53 Barb. 403; 35 Am. R. 683; 16 N. W. 666; 47 L. R. A. 226; 37 S. W. 260. *Contract must be construed by its own terms:* 42 Am. R. 701; 23 Am. St. R. 785. *Deed is not void as against public policy because it prevents clearing land:* 131 Am. St. R. 540; 77 S. C. 467; 85 S. C. 405; 79 S. C. 466; 80 S. C. 106, 185.

*Messrs. Kelly & Hinds* cite : *Whether temporary injunctions are essential to right of plaintiff must be determined by Circuit Court:* 86 S. C. 161; 75 S. C. 220; 84 S. C. 51; 87 S. C. 566; 88 S. C. 121. *Provision as to cutting and removing is an independent covenant:* 79 S. C. 168. *This provision is not indefinite or uncertain:* 9 Cyc. 250, 215; 139 N. C. 160. *Contract is not void as against public policy:* 9 Cyc. 482, 483; 131 Am. St. R. 540; 77 S. C. 467; 12 Rich. 320.

The opinion in this case was filed on October 2, 1911, and held up on petition for rehearing until

December 7, 1911.    The opinion of the Court was delivered by

HON. E. MARION RUCKER, *acting Associate Justice in place of* MR. JUSTICE WOODS, *disqualified.*

This is an action against the defendant above named, commenced by service respectively on February 7, 1911, and February 17, 1911, upon the defendants.   The object of the complaint was to have declared null and void a certain lumber deed, which in terms was as follows :

"State of South Carolina, County of Williamsburg.

"This deed and contract, made by and between S. M. Clary, of the county of Williamsburg and State of South Carolina, party of the first part, hereinafter called the first party, and the Atlantic Coast Lumber Company, a corporation chartered under the laws of the State of Virginia, the principal office of which is in the city of Norfolk in said State, party of the second part, hereinafter called the second party:

"Witnesseth: That the said first party, for and in consideration of the sum of two hundred ($200.00) dollars cash in hand paid by the said second party to the said first party, the receipt whereof is hereby acknowledged, have granted, bargained, sold and released, and by these presents does grant, bargain, sell and release unto the said second party, its successors or assigns, all the timber of every kind and description, both standing and fallen, of twelve (12) inches stump diameter and upwards twelve inches from the ground at the time of cutting on all that certain piece, parcel or tract of land known as ———, situate in Sumter township in the county of —— and State of South Carolina, containing two hundred and seventy-five (275) acres, more or less, and bounded and described as follows, to wit: On the north by the public road leading from Kingstree to Mayesville and lands of W. V. Brockington; on the east by lands of Robertson and Taylor; on the south by Black River, and on the west by lands of W. V. Brockington, exception being made to the following described timber, which is not conveyed in this deed, to wit: All other timber except the pine, the intention being to convey nothing but the pine timber situated on the above described premises. And the said first party further reserves the right to use any timber from the aforesaid tract or tracts of land for ordinary plantation purposes connected with the said land, this reservation, however, not to include the right to clear the said land or any of it.

"This deed further witnesseth : That the party of the first part does hereby also grant, bargain, sell and convey to the party of the second part, its successors or assigns, a permanent and exclusive right of way eighty (80) feet wide upon and across the tract or tracts of land described as aforesaid, and on all contiguous lands, to be selected and located by the said second party, its successors and assigns, whenever and wherever so desired, to be used for a permanent railroad or tramway; or for any permanent branch railroad or tramway.

"Together with the following exclusive rights and privileges, to be exercised at any and all times during the continuance of this contract, at the pleasure of the said second party, its successors or assigns, namely : to enter freely upon the said above described tract or tracts of land, to have and enjoy all necessary and convenient rights of way, to be located by the said second party, its successors or assigns, over said lands and contiguous lands, for ingress or egress, at any and all times, for men, teams and vehicles; to cut and make roads over said lands; to build, construct, maintain and operate railroads, tramways, cart and wagon ways across said lands on such routes as may be selected by the said second party, its successors or assigns; to establish and maintain stables and other fixtures or buildings on the said lands; and to do any and all other things that may be necessary or convenient for the cutting, handling, hauling and removing of the timber, as aforesaid, from the above described tract or tracts of land, and for the transportation of any other timber and articles of every kind and description that the second party may desire to transport over the said roads or any of them, with the right to cut and use all such small timber and brush as may, in the judgment of the second party, its successors or assigns, be required to build, construct and maintain the aforesaid railroads, tramways, cart and wagon ways, roadways and buildings, fixtures and structures, during the continuance of this contract, for the

removal of the timber hereinbefore conveyed; and together also with the right of the second party, its successors or assigns, to remove at its or their pleasure, at any time during this contract, or at or after its termination, all rails, buildings, structures, fixtures and other property it or they may have placed on said land.

"To have and to hold all and singular the aforesaid timber situate on aforesaid tract or tracts of land, except that above reserved, unto the said party of the second party, its successors or assigns, and to have and to hold the aforesaid permanent and exclusive rights of way unto the said second party, its successors or assigns forever. And the said first party for himself or themselves, and for his or their heirs, executors and administrators, do covenant with the said second party, its successors or assigns, as follows:

First. "That the said first party will warrant and forever defend all and singular the title to the timber upon the aforesaid premises, and also the title to said permanent and other rights of way, and other rights and privileges hereby granted, unto the said second party, its successors or assigns, against himself, his heirs and all others lawfully or otherwise claiming or to claim the same or any part thereof.

Second. "That the said party, its successors or assigns, shall have, and the same is hereby, granted to it or them, the period of ten (10) years, beginning from the time that the said second party, its successors or assigns, begins the cutting and removing of the aforesaid timber from the tract or tracts of land above described, in which to cut and remove the said timber from the sand lands, and that in case the said timber is not cut and removed before the expiration of said period, then that the said second party, its successors or assigns, shall have such additional time therefor as it may desire, but, in the last mentioned event the second party, its successors or assigns, shall during the extended period pay interest on the original purchase price above mentioned,

year by year in advance at the rate of six (6) per cent. per annum.

Third. "The said first party further agrees that the timber cut by the said second party, its successors or assigns, for the purpose of opening, clearing, building and constructing of the railroads, tramways, etc., as hereinbefore provided for, shall in no way whatsoever affect the time granted for the cutting and removing the timber conveyed under this deed from the tract or tracts of land aforesaid.

Fourth. "That the first party shall and will promptly pay all taxes that are now due or that hereafter may become due on the said land and timber. The said second party, for itself, its successors or assigns, covenants with the said first party, his heirs, administrators and assigns, that the said second party, its successors and assigns, shall and will promptly pay all damages done to growing crops in the selection and location of the rights of way above provided for; also any damage that may accrue to the said party by reason of any negligence on the part of the agents and employees of the second party, its successors and assigns, during the continuance of this contract, said damage to be assessed and ascertained by two disinterested persons, one to be chosen by each of the parties to this contract, and, in case they disagree, the two so chosen to select a third, and the decision of any two of the persons so selected shall be made in writing and shall be final and binding upon all the parties thereto.

"All the covenants, stipulations and agreements herein assumed or undertaken by either party to this contract shall be binding upon their respective heirs, executors, administrators, successors or assigns, and all benefits and advantages herein provided for either of said parties shall accrue to their respective heirs, executors, administrators, successors or assigns, as the case may be.

"Witness our hands and seals this 18th day of August, A. D. eighteen hundred and ninety-nine (1899). S. M.

McClary, (L. S.); Atlantic Coast Lumber Company, (L. S.); by R. L. Montague (L. S.), Secretary.

"Signed, sealed and delivered in presence of S. McB. Scott, H. G. Askins, L. M. Overton, H. K. Weaver."

This contract was signed by the plaintiff and the defendant, Atlantic Coast Lumber Company, on the eighteenth day of August, 1899. The complaint attacks the deed upon the following grounds, as being against public policy, in that it requires the grantor to pay taxes for an indefinite period on the timber conveyed, and also for indefiniteness and uncertainty, in that no fixed or certain time was therein provided for the commencement of the cutting and removing of the timber thereby conveyed; and also asking that the said deed and contract should be construed as requiring the grantee and its assigns to commence the cutting and removal of the said timber within a reasonable time, and that the said time should be decreed to have elapsed and expired prior to the entry of the defendant, Atlantic Coast Lumber Corporation (which is the successor of the Atlantic Coast Lumber Company), and that the defendant should be adjudged to have forfeited and lost all rights under the said deed by reason of the expiration of a reasonable time, and that the said deed be ordered cancelled.

There was a further allegation in the complaint for the sum of $2,500 damages caused by the cutting of a part of the timber on the land in dispute, and a petition for a permanent injunction against the defendant, Atlantic Coast Lumber Corporation, for entering on the land and cutting and removing any of the said timber. The record further discloses that certain affidavits were submitted, together with the papers and the deed to Judge John S. Wilson, who, on the third day of February, 1911, issued a rule to show cause, and granted a temporary restraining order to be returnable before the Hon. J. W. DeVore at chambers at Sumter, S. C., on February 9, 1911. By consent of counsel, however, the case was not then heard, but did come up before Judge

DeVore at Kingstree, S. C., on February 24, 1911, at which time the defendant put in various affidavits and its answer, wherein it affirmed that it acquired all the rights of the Atlantic Coast Lumber Company under the deed, and denied that this deed was void for any of the reasons set forth in the complaint, and that it had forfeited its rights thereunder, and further answering it alleged by way of affirmative defense that subsequent to the execution of the deed to the Atlantic Coast Lumber Company that the said lumber company under the authority of its board of directors borrowed one million ($1,000,000) dollars through the Colonial Trust Company, and that such holders of the evidence of indebtedness were *bona fide* purchasers without notice, and that they were entitled to be protected as such, and that the plaintiff herein was estopped as against such *bona fide* purchasers.   Upon the showing thus made before him, Judge DeVore dismissed the temporary injunction granted by Judge Wilson, and refused to grant a permanent injunction, and held that the deed in question was not subject to any of the objections urged by the plaintiff, and that the defendants were the owners in fee of the timber upon the land.   Due notice of the intention to appeal was given, and it now comes to this Court upon exceptions, which are in turn simplified by appellant's counsel to the following three propositions of alleged error:

1. Was there error on the part of the Circuit Judge in dissolving the temporary restraining order, and in refusing the interlocutory injuncton?

2. Was there error on the part of the Circuit Judge in holding that the timber deed in question vested an absolute unlimited estate in fee simple; and that the clause fixing time limit could not operate to qualify or restrict the estate thus granted; so as to require the grantee to cut and remove the timber within a reasonable time?

3. Was there error on the part of the Circuit Judge in holding that the deed is not void as being against public

11—90

policy,—(a) in that it tends to retard the growth of agriculture, and (b) in that it requires the grantors and his privies in estate to pay taxes indefinitely upon both the land and the timber?

For purposes of convenience we will consider the alleged errors as summarized in the reverse order, and we find that most of the questions raised are disposed of by the recent case of *Flagler* v. *Atlantic Coast Lumber Corporation,* 89 S. C. 328, 71 S. E. 849, where this Court held in effect, first, that a deed such as this is in all essential respects, carried with it the necessity on the part of the grantee of commencing the work of removal within a reasonable time from the date of the grant. This intention being found from the language of the grant itself. It is to be remembered that in this case there is in the grant itself on page 12 thereof and prior to the habendum clause the expression in reference to the grantee—"to be exercised at any and all times during the continuance of this contract," and again, and also before the habendum clause, the same language occurs—"at any time during this contract, or at or after its termination" the right of the defendant to remove certain property. Both of these clauses in the deed, and prior to its habendum clause, indicate an intention on the part of the party of a time limit to the contract itself. Further on it is stated in the second covenant on page 14 of the case that the lumber is granted for a period of ten (10) years, "beginning from the time that the said second party, its successors or assigns, begins the cutting and removing of the aforesaid timber, etc." Construing similar provisions to be found in the case of *Flagler* v. *Atlantic Coast Lumber Corporation,* we said, "it is contended by the respondent that this language is plain, simple and unambiguous, simply meaning that when the owner of the timber commences cutting that he must finish within ten years, but the obstacle in the way of the adoption of this view is that it presupposes that the grant was for an indefinite

period, and there is nothing in the grant to show when the removing and the cutting of the timber is to begin * * *." "So it would follow that there is nothing to prevent the grantee from indefinitely holding the land in its original condition: for while it is admitted that the work of cutting and removing must be done within the period of ten years from the date of commencing, it is maintained that it lies solely within the discretion of the grantee to determine when he will commence." And the Court concluded that this could not have been the intention of the parties. And the general rule was announced to be as follows, after the examination of the authorities: page 346, "suffice it to say that we are of opinion that both by the inherent reason of the thing, as well as by authority, that the parties had in view some time for the commencing of the removing of the timber, which intention was not embodied in the terms of the contract, that the law will presume and will enforce that such commencing of the removing of the timber shall be within a reasonable time from the date of the contract."

It was further laid down in that case that what constituted a reasonable time would not be passed upon by this Court, unless first passed upon by the Circuit Judge. The Circuit Judge in this case, as in that, has not passed upon what would constitute a reasonable time, and for the reasons therein set out at length, it follows that the Court erred in holding in effect that the defendant-respondents could commence removing this timber at their will, and that such right would continue to exist as long as any trees were living which were in existence at the time of the making of the contract, but on the contrary should have held that whilst unquestionably the title granted by McClary would convey to the defendants' assignor the fee to such timber, it was a qualified or determinable fee, subject to be defeated by the failure upon the part of the grantee to exercise the rights granted him within a reasonable time. We say again, as we said then, that what constitutes a reasonable time is a

question to be determined upon the merits of each case, and its ascertainment rests upon what was the situation of the parties at the time of the making of the contract, and for this purpose it follows that this case must be remanded in order that the parties to this suit may introduce evidence showing the facts surrounding the contracting parties, in order that the Court may determine what was a reasonable · time as viewed by the situation of the parties when the contract was signed.

The appellant insists that the Court below was in error in refusing to grant the permanent injunction asked for, and in dissolving the temporary injunction granted by Judge Wilson, and asks this Court review that action.

The question presented by this exception is not without grave difficulties. The facts are, that upon a showing made *ex parte,* before Judge Wilson, a restraining order is obtained and a rule to show cause why an injunction should not be granted during the pending litigation, returnable before Judge DeVore, when the return is made including the answer of the defendant accompanied by various affidavits; upon the merits as shown the Circuit Judge dissolved the restraining order and refused to grant the injunction, from which action the plaintiff duly appealed. Counsel for respondent insists that the position taken by counsel for the appellant is new and was not urged before the trial Judge, and that for this reason should not now be considered under cases cited. It is impossible for this Court to pass upon such a question. The question of an injunction was certainly before the trial Court, as shown by the record and the second paragraph of the Judge's decree. Whether the reasons then assigned are the same as those now urged, we have no means of ascertainment, and it could not be assumed that they are different, even if a difference of reasoning were material, which we do not assert to be the case. In this case no injunction was granted. The recent case of *Crawford* v. *Atlantic Coast*

*Lumber Corporation,* 77 S. C., page 81, 51 S. E. 670, seems to be in point.  There a temporary injunction was granted by Judge Dantzler, and subsequently dissolved by Judge Gary, the case being, as this is, a timber case, and the injunction prayed for was to restrain the cutting of timber as here, Judge Gary based his order of dissolution upon the ground "an inspection of the complaint shows that it is general in its allegation of irreparable injury by the mere cutting of timber trees without any allegation showing that irreparable. damage would arise or such damage as could not be fully compensated for in an action at law.  Further there is no allegation of the insolvency of the defendant."  And this Court, speaking through Mr. Chief Justice Jones, said, page 83 : "Where the action is for the sole purpose of an injunction and a temporay injunction is essential to the assertion and preservation of a legal right, if established as alleged in the complaint, it is error of law to refuse or set aside a temporary injunction."  Citing *Alderman* v. *Wilson,* 69 S. C., page 159, 48 S. E. 85.  The Chief Justice proceeded to state that the temporary injunction did not work automatically, even if the complaint stated a cause of action, but that the trial Judge must consider the showing made by the defendant; and then reverting to the facts in that case, found that no showing at all was made by the defendant and the complaint having stated a cause of action held that the Circuit Judge erred in dissolving the injunction, and reversed this order and restored the injunction.  In that case, as in this, the injury sought to be prevented was the cutting of the timber, there, as here, the temporary injunction was set aside, and appeal to this Court had, the only difference between the two cases was that in that case no showing was made by the defendant, whilst in this case the showing made under the deed by the defendant was insufficient.  In principle is there any difference between no showing and an inadequate one?  In some cases possibly there may be, but not under the class of cases now being con-

sidered; for as the Chief Justice held in the Crawford case, *supra,* "The injury complained of in this case is the threatened destruction of the timber and trees on the plaintiff's land, a permanent injury to the substance of their estate, and falls within the class of injuries generally deemed in equity to be irreparable." So despite the discretion wisely vested in the Circuit Court; when by his construction of the timber deed he necessarily denied the injunction, that construction being erroneous, the injunction became an essential part of the plaintiff's rights, and is therefore restored pending the determination of the question of a reasonable time hereinbefore remanded to the Circuit Court for determination.

4     Petition for rehearing refused by order filed December 7, 1911.